Good morning, Your Honors. My name is Michael Willeman with Wigdor, LLP, for the appellant in this case. Ms. Eckert asserted claims under the New York City and State Human Rights Law, including that she was subjected to a hostile work environment while working at FOX News. Specifically, she alleged, and the discovery showed sufficient to survive a motion for summary judgment, that she was raped, sexually assaulted, and sexually harassed by one of FOX News' prominent on-air talents, who used his position of power at FOX News to do so. So can I ask why raising a legal theory for the first time on summary judgment is not forfeiture? This was not — the legal theory itself was pled in the complaint. The statute that was cited was 8107, etc. This legal theory under 13b-1 was pled just as much as any theory under 13b-2 or 13b-3. The cases have repeatedly held, as we cited— Was pled how? Just by reference to 13? Excuse me? Just by reference to Section 13b? Well, by reference to — bringing the claim against FOX was in and of itself enough to put it on notice that we were seeking to hold it liable under the City Human Rights Law. And we cited the City Human Rights Law. And there are three avenues towards liability under the City Human Rights Law, Section 13b-1, 2, and 3. There was no — there was nothing more specific in terms of identifying 1, 2, and 3 for 2 or 3 than there was for 1 in the complaint. The complaint only had to put notice — excuse me, put FOX News on notice that we were seeking to hold it liable for the sexual harassment of Mr. Henry. But then — And I would — But then FOX News filed a motion to dismiss, and it made an argument as to each of those three prongs, and it asserted as to the first prong that the question was whether Mr. Henry was supervisor for your client. And in the response, it essentially accepts that legal framework and argues broadly that he's not. Well — The theory that you're raising now, it may be a valid theory, but it is not. No court has ever interpreted supervisor the way that you're suggesting that we should here. Wasn't it incumbent on you to raise that in response to the motion to dismiss? Your Honor, it wasn't required for a couple of reasons, or at least not more specifically than we raised it. First of all, we did quote expressly the statutory language, including 18 — excuse me, including 13b-1, which we ended where the clause ends, which does not include over the victim. And we also briefed in — at length the general authority that Ed Henry had at FOX News. Now, it is true that the motion to dismiss as to that prong focused on that authority as it applied to Ms. Eckart. But there was no obligation at any point in time on a motion to dismiss before discovery was conducted and the evidence was adduced that we had to argue expressly what we argued on summary judgment, which is that the law is what it is. The other issue is that — Why isn't there? Because when you conduct discovery, you're conducting discovery with an eye to the elements that will need to be proven or disproven and will be contested at a trial or on summary judgment. And having responded to the supervisory liability argument by simply denying that — or arguing that he had supervisory liability or responsibility over her, why doesn't that sort of set up any — well, I guess there wouldn't be further discovery because it was dismissed on that basis. That theory was dismissed, wasn't it? Well, no, it wasn't. There was no dismissal. That's the issue. And to step back is that this case was not dismissed against FOX News. And FOX News's liability arises under that Section 13 of the City Human Rights Law. And there are three ways in which to prove it. The case law is very clear. For instance, this Court's decision in Albert v. Caravano that — and I'm going back to the complaint because a lot of cases there are no motions to dismiss. We file a complaint. The complaint is not obligated to set forth every theory of liability or even to cite the statute. And that — the failure to do so does not affect the merits of a claim. Well, maybe I can ask the question the other way. Where in the record do you think establishes as a matter of law that there is a material dispute over whether or not he was a supervisor at all? The best I can find is your 56.1 statement where she's talking generally about these responsibilities. And they are expressly disputing that with statements, with affidavits, with deposition testimony. So even if we were to agree that it is not forfeited, which I'm not saying we will, and even if we were to agree that you were correct on your proposition of law, which I'm not saying we are, how do you prevail here? Where is the dispute of material fact? Well, Your Honor, I mean, the — it's not just — well, let me start from the specifics. Because it's not just general authority at the company. Our client swore under penalty of perjury — I actually asked a record question, if you don't mind. It will help me if you tell me where are the specific sites in the record that you think are sufficient to dispute a question or to create a material fact dispute — C.A. — to survive summary judgment. C.A. 336 to 338, C.A. 848 to 849, C.A. 828, C.A. 819, A. 270, C.A. 820, C.A. 829 to 831 — Slow down, because I'm going to go check all these. Okay. C.A. 814 to 815, C.A. 821, 822, 823, 825. Okay. Go ahead. Could you just describe briefly what those are? Yes. So what I started was specific and got more general. The specific declaration that I was referring to when I started to answer the question, I apologize, incorrectly, is Ms. Eckert's declaration around her firsthand observations on Mr. Henry's supervisory status over his field producer, camera person, and audio person. And there is nothing in the record — When was that declaration filed? That was filed in opposition to the summary judgment.  Correct. So we're talking about 2024, several years after the matter had been pending, right? That's correct. But she wasn't asked at her deposition questions to which this would have been responsive. And this — Well, the theory of liability that you're pressing now wasn't really at issue earlier, right? I mean, Your Honor, it was at issue as much as any other theory of liability. The complaint alleges — Well, don't you agree that the three theories of liability and the three portions of the statute are very different? One is the employer is liable if the employee, the wrongdoer, exercised managerial or supervised responsibility, and we debate about over the victim. The second is showing employer knowledge and acquiescence. And the third is should have known of the discriminatory conduct. These are very, very different paths to liability and require different showings, don't they? There's — they are different, for sure. They're not — they're not completely overlapping. I think evidences to one often can support the other. But — but I would like to make one other point, because this — we pled what we were required to plead. The motion to dismiss is based on the allegations in the complaint. On the summary judgment, we opposed it on the basis that the law was what it was. I mean, our — the law is what it is. There's no changing the law. And in opposition to the motion for summary judgment, there was never an argument made that we somehow improperly raised this for the first time on summary judgment. If this was a — I mean, frankly, I know this is what we're focusing our time on, and I appreciate that, but this isn't Hail Mary on an appeal. This was never raised to the district court. There was never an argument made that we had failed somehow to assert this theory of liability sufficient for the court to decide it on summary judgment. It was opposed on the merits. And so now we have, ironically — Well, it was opposed on the merits and on the basis that the district court had essentially already resolved the subsection 1 supervisory responsibility claims by — in its summary judgment — or in its dismissal ruling, saying, yeah, that theory is off the table. The only way you can be liable under the New York civil — New York law is under subsection 2 and subsection 3. Well, but if that's the case, then they're having their cake and eating it, too. They can't, on the one hand, say that the court decided this on the motion to dismiss, and on the other hand, say that we never raised it or that it was never the subject of litigation. Well, are you appealing the court's dismissal ruling? Are you challenging on appeal the court's dismissal ruling? We're not — no. The court's dismissal ruling was — was very specific because — because of, as defendants argue, the focus on that at that time, on the allegations in the complaint before the evidence was adduced in discovery, was on what we believed strategically to be the argument that would most win the day, frankly, which was — should have known, and our clients, to the extent that Henry was her supervisor. But they can't say that — and that — so that's what the court's decision was limited to. Now, they want to, at the same time, expand it and say that the court dealt with this issue, which it didn't, and then also contract what the court supposedly considered on the motion to dismiss to say we waived it, but none of this happened. If they dealt with this issue, though, it wasn't — if this issue means the theory that supervisory liability attaches under subsection 1 because someone is a supervisor of anyone, why would the court have addressed that theory when it wasn't raised? I — I agree. I don't believe that that theory was litigated. So all I'm saying, Your Honor — But who's got a job to litigate it, is what I think the question is. No, no. It's like who's — who is responsible for the fact that there was not discovery conducted on it, that there was not specific testimony as to it more generally, that there was not questions of law, that, like, whose fault is it that it wasn't litigated? There's no fault. We — our obligations are to plead a complaint that's satisfactory, which the case law that I cited and many other cases made clear we did. When we're faced with a motion to dismiss, our obligation to our client is to survive it, which we did. And then we took discovery in the case. And if defendants really believed that they were prejudiced, or if the defendants really believed that we had waived this argument by not litigating it in the motion to dismiss, they would have made that argument on summary judgment. I don't see how there could be, Your Honor, a logical consistency between determining that we somehow waived this argument for not throwing spaghetti at the wall in a motion to dismiss, when the argument that we waived is — So we're making this argument spaghetti now? Well, my point, Your Honor, is that we targeted the issues as they were presented in the defendant's motion. The defendant argued certain things. They argued that there was not enough allegations to establish that Mr. Henry was our client's supervisor. We argued against that point. We argued against the point that they didn't know or should have known. And we won the motion to dismiss. Okay. But you didn't say our theory is not that he was her — like, you didn't say, but even if he's not her supervisor, it doesn't matter because he's a supervisor. That wasn't an argument that they made. It wasn't an argument that we responded to.  Because they don't believe that to be true. They believe that their burden is just to show that he wasn't her supervisor. Understood. But that's not what the law says, Your Honor. I mean, respectfully, that's not the law. And if they made an argument that was narrower than what the law requires, and we responded to that argument on a motion to dismiss, we can't then be precluded because they made a narrow argument that we responded to narrowly, and then say, not on summary judgment, but say on appeal, that we somehow waived the ability to make — to have the law apply correctly in this case. So it's incumbent on them to pursue all possible theories of liability, even ones you haven't articulated? I don't think that any — any party, to be fair to them and to us, was obligated to do anything on the motion to dismiss as far as any arguments. I'm not arguing that they waived the right to dispute the substantive issue, which is whether or not the law applies the way that we say it applies. They didn't waive that by not raising it on the motion to dismiss. Just to be clear, no one — they could have made arguments on summary judgment once the evidence came out that were different than the arguments that they made on motion to dismiss. That happens all the time. And so no party on a motion to dismiss is locked in for the rest of the case as to any argument that they could make at any future time. There is no case that says that. And the case that's cited by the Court for that sort of proposition is a case that dealt with a decision following summary judgment on a statute of limitations issue that was revisited after trial on the same statute of limitations issue looking at the same exact evidence. Parties — parties don't even move to dismiss. Had they not moved to dismiss, I wouldn't be up here arguing that they can't move for summary judgment because they didn't argue 13-1, 2, or 3 on the motion to dismiss. And neither should they be on summary judgment, much less on appeal for the first time, be able to argue that because we didn't put something in a motion to dismiss opposition that we survived, that we somehow waived the right to have the law apply correctly. And I would argue also, finally, that if — if we did somehow waive this, and they didn't waive the argument by not raising it earlier, that the Court should nonetheless address the issue because this would create a manifest adjustment and a total perversion of what the city human rights law is supposed to protect under these circumstances and is not consistent with the language, the statutory interpretation, the cases, or the legislative history of the New York City human rights law. If you don't mind, before you sit down, talking to me like I'm a first-year law student and explaining to me what you think is doctrinal — what the — what the material doctrinal difference is between the New York City human rights law and the New York State law. What are the elements that are different in your view? Because I'm trying to figure out if they rise and fall together. Understood. I don't believe that in — as relates to this issue, that the outcome is different because even though the city human rights law has these three provisions of corporate liability and the State human rights law does not have the same three provisions and at the time — it's since been amended, but at the time that this happened, the New York State human rights law was largely interpreted consistent with federal law. And under that — even under that, under the State human rights law at that time, we were looking at something of a negligence theory as far as liability here. And for — for, by the way, if there's not a supervisor. If there's someone that's a supervisor, I would suggest that even under the State law that that would have been — So do you — some folks read the State law as including a relationship between any supervisor and the injury. Do you think that that is an — do you think that that's a proper reading, that there's a connection, and therefore harassment is a bit — might be potentially harder if it's not direct, if it's not just the direct supervisor? Or is that a — is that a misreading? Well, I think — and I could be wrong, and I apologize if I'm misinterpreting the question, but I believe that what Your Honor is getting into really ultimately is the Farragher-Ellerith defense and how that operates, where there is someone who would be a coworker versus a supervisor. And then if a supervisor is a tangible employment action taken, like a termination or a promotion, et cetera, under the Farragher-Ellerith defense, in a case of harassment like this, whether the person was a supervisor of the individual or a supervisor at large, the Farragher-Ellerith defense would be available at that — at the time that this was filed under the State human rights law. And so there could be an affirmative defense for them to then say that, you know, there was an avenue for complaint procedures that wasn't adequately followed and as a result, you know, we didn't know or should have known. Now, if they knew or should have known, that would undermine the Farragher-Ellerith defense. If they didn't have an adequate avenue for complaint procedures, which we argue at length, which I won't regurgitate, then that would undermine the Farragher-Ellerith defense. So I think that these all ultimately are issues of fact that would end up having to go to a jury, even under the State human rights law. We also argue that once they did find out about this in 2017, that there was not only ongoing harassment, but that the investigation that had been conducted even at that time demonstrated essentially a ratification or a condonement of the prior actions. So there's a lot of avenues we can go down here, but I think ultimately we're in the land of affirmative defense where we're now in front of a jury. Thank you. We'll get to hear from you again. Thank you, Judge. Attorney Fisher. Good morning, Your Honors, and may it please the Court. My name is Rachel Fisher with Proscow Rose for the Applebee Fox News Network. Ed Henry's conduct cannot be imputed to Fox News because none of the three statutory bases for employer liability are present here. First, there is no evidence that Fox News knew of Henry's alleged harassment of Jennifer Eckert at the time that it occurred. Eckert reported it years after the fact, and once she did that, Fox News took appropriate action. It immediately investigated and fired Mr. Henry within days. Second, the timeline demonstrates that there's no basis for finding that Fox News should have known of Henry's alleged harassment of Eckert. The last sexual encounter between Eckert and Henry allegedly occurred in February of 2017, and at that time, the only information that Fox News had was that Mr. Henry had an extramarital affair outside the workplace, which was entirely consensual, which is, of course, insufficient to put the company on knowledge that he might engage in sexual harassment or assault. Although the last contact of that nature was in February of 2017, but there was no contact afterwards, including contact that was clearly unwelcome, right, the high-profile e-mail back, right, or message. Why isn't that contact, which took place after a whole bunch of additional information came to light, why isn't that part of the same continuous course of unwelcome conduct, reading things in the light most favorable to the plaintiff? For a couple of reasons, Your Honor, and first, I would note that the plaintiff did not raise that later conduct in opposition to Fox News' summary judgment motion, and Judge Abrams held in her decision that they therefore, although pleaded those issues in the complaint, they did not raise it in opposition to summary judgment, and therefore waived any argument that that later conduct could serve as a basis to deny summary judgment. But even addressing it, even putting that aside for a moment, Fox News still was on no notice at the time of those 2018 communications that Mr. Henry posed a risk to Ms. Eckert or to anybody else. The only information that Fox News had was what was brought forward in April of 2017, so this is several months after the last physical sexual encounter between Ms. Eckert and Mr. Henry, when a producer reported that in the past she had an intimate relationship with Mr. Henry, and she reported some other rumors of, again, entirely consensual interactions that Mr. Henry had with other women. Those facts could not have put Fox News on notice that he might engage in sexual harassment or assault. And second of all, Even when an employer sort of has reason to believe that somebody is having serial sexual contact within the workplace, that doesn't, that's not enough to create a duty to investigate to ensure, because I think the reports were sort of, some of them were kind of rumors to sort of get down to the primary source to understand the dynamics of that and whether it could qualify sexual harassment. Well, Your Honor, I don't think there's a duty to investigate because the information that was reported, none of it was of a non-consensual or harassing nature, but Fox nonetheless did investigate and tried to track down what was going on with Mr. Henry by calling and making some inquiries in terms of looking into the specific issues that were raised, and none of them were substantiated. And again, none of them in any event would have put Fox on notice that there was any unwelcome conduct going on with respect to Mr. Henry. The third statutory basis for liability is, of course, the supervisory theory, which is not a viable theory here. After Discovery failed to turn up any evidence in support of the newer sort of known theories, that was when Ms. Eckert pivoted a summary judgment and argued that Henry supervised her or others. Those theories were not pleaded, but even if these unpleaded theories are considered, there is no admissible evidence that Mr. Henry exercised supervisory authority over Ms. Eckert or of anybody else. And I'd like to point out one of the arguments that my colleague, Mr. Williman, just made was that Fox News never argued on motion to dismiss anything about Mr. Henry's supervisory authority over people other than Ms. Eckert. I would just note that at docket 118 in the lower court, which is Fox News's motion to dismiss brief, page 16, Fox News argued that Eckert did not allege that Henry was her manager or supervisor or that he managed or supervised anyone else at Fox News. That was in Fox News's brief. And in the plaintiff's opposition brief, she, of course, only addressed the argument that Mr. Henry was her supervisor because that was her contention at the time. She made no argument with respect to his supervisory authority allegedly over others. With respect to the coworker theory of liability, it was undisputed that Fox News was not on actual notice that Mr. Henry and Ms. Eckert had any interactions at all, let alone that those interactions were harassing. Eckert never complained about Henry during her employment, and both Eckert and Henry concealed their relationship. So although Fox News maintained multiple avenues for employees to report sexual harassment, and Ms. Eckert was aware of how to make a report, she did not do so. Go ahead. Would Fox News be prejudiced if we were to accept your friend on the other side's arguments that mere reference to Section 13 of the New York City Human Rights Law was sufficient to raise the possibility of liability under any of the three paths? If I'm understanding the question, Fox News would be prejudiced in the sense that the district court held at the motion-to-dismiss stage that the plaintiff failed to plead the supervisory theory, period, full stop, and the district court was very clear that the case could only proceed on the new or should-have-known theories. So there should really be no consideration of the supervisory theory, as Judge Abrams held. There should be no consideration of that theory at this juncture. But even if there is, and we have this in our papers, even if the court were to consider that waived and unpleaded theory, there's no admissible evidence in the record that Mr. Henry supervised Ms. Eckert or anybody else, and so the outcome is the same. Excuse me, but in her declaration, she says she has personal knowledge that he's supervised others and had the ability or, you know, de facto authority to affect a dismissal, for example. Although Ms. Eckert states that she has personal knowledge, she and Mr. Henry never worked on the same, she never worked on Mr. Henry's show. They worked on different divisions of Fox News. They worked in different cities. So her allegations in that declaration are completely speculative, could not possibly be based on personal knowledge, and are vague and conclusory and don't provide any basis for reversal of the court's summary judgment decision. I thought, and I'm sorry, I'm not looking right at the record right now, but I thought some of the facts that she relied on were her own observations that when he appeared on his show, he essentially was in a position to instruct various people involved with the show how to do their jobs. Am I misremembering that from record? I believe what Your Honor is referring to is in the declaration, Ms. Eckert states that when Mr. Henry was a guest on the show on which Ms. Eckert was a guest on, he gave some direction about so-called graphical elements of the show or something like that. But, of course, being a guest on a news show certainly does not create a supervisor and subordinate relationship. The law is very specific about what authority a supervisor has and what makes somebody a supervisor. Is it broader under the New York law, in your view, sort of the notion of the level of influence that somebody has that would qualify them as a supervisor than, say, Title VII? Or in your view, is it all the same? Under the case law that we've cited, there are courts that have said that it's broader under the city law in the sense that the city law, under the city law, someone could be considered a supervisor if they direct the daily activities of the employee, which certainly is not the case here. An occasional appearance on a show wouldn't be anywhere close to directing the daily activities. Okay, but he's got his own show in D.C. Correct. And I guess the question is whether there's a reason, a jury could reasonably infer that as an anchor in the context of his own show, he's directing the daily activities of the folks who are working on that show. I mean, that doesn't seem like such a stretch that I would rule it out as a matter of law, but tell me why that's wrong. Well, there's no evidence of that in the record. And it's very clear in the record. And, again, we were – Well, I'm sorry. So is it that there's no evidence or that her testimony is not sufficient to establish that as evidence, right? Because you certainly have the McKenna declaration. You have Henry's declaration himself. You have the Hearst testimony that is all good facts on your side, right, that suggests that he didn't supervise anybody. At best, he had input. But she says, based on her observations, the control that they have. So is it that there's no evidence or just that you don't think we should credit her evidence as being sufficient? I suppose a more precise way of looking at it would be to say that we should not credit the declaration of Jennifer Eckert, which is speculative and not based on personal knowledge. And the idea that Mr. Henry supervised Ms. Eckert or other people – I'm sorry, and the declaration or the deposition, right? Because I'm looking at her anchors are responsible for promotion decisions in relation to the editorial staff. And I have a cite for that as the deposition. Is it the deposition or the declaration, or is there both deposition evidence and declaration evidence that says the same thing? I'm sorry. Can you repeat the cite? I am seeing at A275, paragraph 348, that anchors are responsible for promotion decisions in relation to their editorial staff. And it cites a deposition cite, Exhibit 5. Well, anchors at Fox News are not responsible for supervising their staff, and that is in the record. For example, Ms. Eckert, although she worked on the Clayman Show, Liz Clayman was the host of that show, Ms. Eckert reported to Brad Hurst. He's her supervisor, and, you know, Ms. Eckert was a production employee and therefore reported through the production line. And that is how it works at Fox News, both with respect to Ms. Clayman and also with respect to Ed Henry. He didn't have input or he didn't have control as a supervisor over anybody, just like Liz Clayman, the host of the show on which Ms. Eckert worked, didn't have supervisory authority over Ms. Eckert. That's the process, and that's the evidence that, you know, neither of these anchors and no anchor was a supervisor. And, in fact, going back to the law and what it means to be a supervisor, it's not about, you know, how prominent somebody appears on TV or how often they appear on TV or who they're interviewing or how important they look. It's very specific. It's does this person have the authority to hire, to fire, to promote, to determine compensation, to direct the daily activities, to effect change in benefits. Those are the types of issues that make somebody a supervisor. Direct daily activities, I think, is sort of more in the arena we're looking at here. The question is whether, knowing what she knows about how her show functions, and I think it sounds like most shows function, is it an impermissible, legally impermissible inference to say that, as anchor, he directs the daily activities of the production assistants and other people on his show such that he's a supervisor under the New York City law? Oh, yeah. That is an inferential leap, and that is speculation. Ms. Eckert didn't work on his show. She can't testify to what went on on his show because she didn't work on it. She was a producer, again, in a different city, different division of the network, and a different show. And, again, the allegations, even if she had first-hand knowledge, which she does not, are so vague and so conclusory that they couldn't possibly create a material fact dispute here. And just with regard to the law, a number of courts have interpreted subsection 1 to require supervision over the individual, over the victim who is making the claim. There is some contrary authority in Melendez. What's your position about the state of the law? Well, our position is that the law does require that supervisory relationship between the alleged harasser and the victim, consistent with the authorities that we've cited. And, again, that was the issue in this case. That was the issue that Plaintiff alleged at the motion-to-dismiss stage, that Mr. Henry was her supervisor, which is why that's the issue that was addressed in this case by the Court. But the statute, of course, doesn't say that. The statute doesn't say that. And even if the Court were to credit the Plaintiff's view of the world here, that supervisory authority is broader, again, it would not change the outcome because there's no record admissible evidence that would create a material issue of fact in Mr. Henry's supervision. So you're just not taking a position on what the law means? Well, no, I am, actually. I think the law does require the supervisory relationship between the supervisor and the victim. But I'm also saying this Court need not reach that question in order to decide this case, necessarily. And Melendez doesn't go otherwise? Melendez doesn't go otherwise. Melendez doesn't go otherwise because that issue related to sexual harassment that was known by a supervisor. And I don't believe in that case the alleged harasser and the alleged subordinate were separated in terms of a supervisory line. I don't believe that's the case. I think one was a supervisor and one was an operator. I think there was a question about what the trial court had found versus what the First Department said. The First Department seemed to say it was broader, that if a supervisor had was a malfactor, that that was enough even if he didn't have a supervisory relationship with the victim. My understanding is that actually goes to a different prong of the city law relating to corporate knowledge, that in order for knowledge to be imputed to the employer, the person who learns of the harassment doesn't need to be the supervisor or the plaintiff. It could be somebody else in a supervisory role. And then corporate knowledge could be inferred on that basis. And, of course, here there was no knowledge by anyone in management of any alleged harassment. But doesn't it sort of follow, I mean, if knowledge of somebody who doesn't supervise her, this is happening. Oh, you're saying. You could see the argument that if knowledge of any supervisor is enough to impute corporate liability, that the conduct of any supervisor ought to be corporate liability in terms of conduct. I mean, it seems like those two ought to rise and fall together. I understand that. I mean, I also think that there is a special relationship between a supervisor and subordinate. And, you know, cases have used that language repeatedly, that the supervisor must have authority over the plaintiff. And we've cited a number of those cases in our papers. But, again, you know, at the end of the day, this effort has no admissible evidence to support a supervisor relationship under either theory. So I want to ask one other question about the. . . I'm trying to figure out how to interpret the district court's order on the dismissal motion. Because, on the one hand, it does say pretty clearly, and I think you've sort of identified that remark, that the supervisory liability theory is off the table at this point. Now we're going to focus on the other two. Because all of the different types of liability under New York's civil rights law were kind of pled as one count, when you get to the mandate at the end of the motion to dismiss, it doesn't list count seven, even in part. It doesn't list the count that includes the New York statute. And so do we understand the district court, based on what it said of sort of outside of the mandate, to have essentially dismissed the theory of corporate liability through managed supervisor responsibility, or the responsible supervisor, or do we understand the court to have left that. . . What did the court do with that claim in the motion to dismiss? So at the motion to dismiss, you know, our reading of that is that the court did away with this theory that Mr. Henry was a supervisor. I mean, this is at page A85. Plaintiff's complaint contains no allegations to support the conclusion that Henry was ever Eckert's supervisor, had the authority to hire her. And at A89, Henry was not Eckert's manager or supervisor. Fox News can thus be liable for Henry's conduct only if it knew or should have known about it. And so with that, I mean, the court, I think, was pretty clear that the only viable theory going forward was the knew or should have known theory. Okay, so what happens if we think the district court got it wrong, that it was only a theory if he was her supervisor? If we read the New York City law to be broader, to say any supervisor, what do we do with those statements of the district court, and how do we understand them, and what do we do next? Well, at the motion to dismiss stage, the plaintiff made no argument along those lines. The plaintiff did not argue that there was this broader reading of the law. So you're saying that your argument, then, as to why we wouldn't send it back to say, okay, that's a wrong theory, go check it under the right one, is because they forfeited it. Correct. Okay. So if we disagree with you about forfeiting and we think the district court was wrong on the matter of law, you think the appropriate – I know you disagree with both of those. You think the appropriate thing to do would be to send back for more, I guess, backbinding or to a trial on whether or not he was a supervisor? Well, no, Your Honor. We don't think there's any need to send it back, because on the record that's before this court – Because the record would prove that there was no material fact. So that's okay. Because of the record before this court establishes that there's no – the allegation that Mr. Henry supervised others was not pleaded, and the facts on summary judgment do not support such a finding.  But do they create a material dispute? Is there a material dispute? There is not. And it's because you think that we should not credit her arguments as being speculative? And inadmissible. And the declaration is inadmissible. The arguments are speculative and conclusory, vague. I mean, that declaration is insufficient to create a material fact dispute. Okay. Thank you. Attorney Wilman. Thank you. Just a note. Can you start off by saying why it's not inadmissible or why you think the declaration that she said was inadmissible is not inadmissible? Yeah. Well, the declaration is not admissible. I mean, literally the declaration is not going to be admitted to the jury. The testimony would be admissible because Ms. Eckert spent six years at Fox News observing not just the way that these shows operated and testified about it also in her deposition, as Your Honor pointed out. Your Honor was correct about that. But also specifically with respect to how Henry treated his staff when they did interact with each other. And they did interact with each other on occasion when he would be on her show. And she has, like I said, the experience of having worked there for six years to understand the authority and power that on-air personalities have with respect to cameramen, field producer, and audio person. But they were in different divisions of Fox News, right? Yes. The business and news, and they were in different cities as well. Correct. But the fact that someone is in a different division doesn't mean that they didn't observe relevant facts that would suggest that someone who was an on-air personality with the cachet of Mr. Henry here would have the ability and responsibility to engage in some degree of managerial or supervisory acts. And having had the opportunity to work with him specifically and see that. And also, Henry's own statements when he was trying to get our client to submit to his sexual demands, that he would get her in a room with powerful people, that he could get her on her show. These are statements that are of a party opponent, and there are statements that are admissible for the truth of those things. He, his own braggadocio, got what should be sufficient to establish that he had the types of authority that a supervisor, and I keep saying supervisor, but that's not the standard of the law. That's a word that's used in Title VII. His own words show that he had supervisory or managerial responsibility, and that helps to support Ms. Eckert's own personal observations. We had no declaration of a cameraman, a field producer, an audio person, or anyone else to say that they didn't take direction from Mr. Henry. You had McKenna, Hearst, and a number of other people saying that they didn't control anybody. Well, just to be clear, McKenna is a Proskauer lawyer. She's since retired, but she's not, unless I'm mistaken which declaration is which, Kathleen McKenna is the lawyer. I'm sorry, you're right. That's okay. But why would that have been a topic of discussion at the deposition since this theory was only, arose after discovery was complete? Because it didn't. I mean, the bottom line is, and that's to Your Honor's point, this was not dismissed. The claim was not dismissed. Now, if there was anything that was determined as far as law of the case, it was that Henry was not Eckert's supervisor. I would argue that that was only as it relates to the allegations, and that doesn't carry over to summary judgment, but we don't need to have that argument because at the end of the day, Count VII is still in the case. And there were all sorts, all the evidence that defendants have from Ed Henry, I couldn't hire anyone, I couldn't fire anyone, all the evidence that disputes, just to be clear, creates a dispute with the evidence that we have, all was gathered because everyone knew his status as a prominent individual and his authority at the station was at issue in this case. And that's why on summary judgment, if you ask, when Your Honor's asked about prejudice, there's no prejudice. If Fox News thought that it was prejudice on summary judgment because we raised this issue for the first time in opposition, you'd think that Fox News would have noted that in its reply, would have argued that we had waived it by not raising it earlier, and at a minimum would have asked to reopen discovery on an issue, but it didn't because everyone was conducting discovery around Henry's responsibilities at Fox News throughout this entire time period. So just so before you sit down, I want to make sure I understand. You are not, to the extent you're arguing about supervisory responsibility, you're asking us to do it through a summary judgment lens, based on the summary judgment record. You are not, if we believe and conclude that the district court ruled on that theory on the dismissal stage, you are not asking us to review the dismissal order to see whether the pleadings would have supported that claim. No. To be clear, though, just to be, because I want to be very precise, and we cite this case law, the district court, because it wasn't briefed, that issue could not have been a law of the case and could not have then precluded us from arguing it on summary judgment. So I'm not arguing that the district court considered the scope of Section 1, 13b.1, narrowed it, then, under the law, to whether or not Henry was Eckhart's supervisor and held that our interpretation is wrong, and now I'm asking you to revisit it. None of that happened. What I'm saying is that if the district court decided anything that is law of the case, which for reasons we explained we don't think it is, it only decided that as an allegation pleading perspective we did not plead that Henry was Eckhart's supervisor. Usually at the motion-to-dismiss stage, when a court says your pleadings are insufficient on this claim, theory, whatever, you're sort of deriving some benefit in your argument from the fact that your count as you pleaded in your pleadings encompassed a bunch of very distinct theories with different elements of proof. And so you're saying, well, since they didn't dismiss the count, every theory is in there. But if a court on dismissal says that theory is not in the case anymore, that one of the three prongs that comprise this count isn't in the case anymore, then, yeah, you can challenge that ruling on appeal with reference to the pleadings. But you don't get to come back and say, well, even though you told me I didn't plead this sufficiently, now you want to rule on it and serve a judgment. But if that were the case, and I'm not, for the purposes of this, I'm not even, there's no purpose in even disputing it, because the court didn't dismiss any theory, the court didn't dismiss any law, right? In other words, the court didn't dismiss Section 1, 2, 3. It didn't dismiss 807. It dismissed one of two available theories under Section 1. Well, what it dismissed, what it held was that the pleading, and for this I'll say it carries over, the evidence even. If I'm going to conceive that, I don't, obviously. But the evidence does not show that Henry was Eckhart's supervisor. That's what was decided, period. There was no decision beyond that. And so if the court only decided that Henry was not Eckhart's supervisor, let's just say, fine, I won't, I abandon that. I don't abandon it, but I abandon it. That does not mean that the court cannot analyze on a summary judgment motion whether or not the law is as we say it is. No, but I want to go back to your, not what I'm going to call your novel theory, and by novel I don't mean it's wrong. It's just, it's not the theory. We don't have a case that clearly articulates that theory. But your heartland theories that the court addressed in the motion to dismiss, that he's not her supervisor, he wasn't her supervisor, and that's not sufficiently pled to go forward. Did you then come back on summary judgment and ask the court to revisit its holding now on that with reference to the evidence? I believe the summary judgment touched upon that. But to be honest, Your Honor, we've been, my summary judgment papers focused very heavily on the way that the law should operate. I understand that. I understand that. What I'm trying to untangle here is that you have raised it as a distinct argument on appeal. Yes. And I'm trying to understand whether if we review that argument on appeal, you think we should review it through the summary judgment record rather than through the pleadings, which clearly I think you could argue, but you haven't been arguing. And I want to make sure I understand that you're not trying to argue that. No, no. The summary judgment record is where we are and what we're relying on now. Okay. So, okay. Yeah. And I just want to say, to Your Honor's point about no cases on this issue, Zekshevska, the new school case, actually in a quote, the school's argument that Section 8107.13 does not apply to all managers and supervisors is not supported by the statute's text. We cite the legislative history in Chenoster for similar things as well. And if I may, just one, to Your Honor's question about the should have known and if someone who didn't do it should have known, now there's liability. This creates an absurd result. The COO of a company could sexually harass and rape and assault the CFO's secretary without the company being liable because the COO's knowledge is not imputed under defendant's theory here because he's not that person's supervisor. If the janitor's manager should have known about it, now the company's liable. That is an absurd result. Just backing up for one quick minute. My record shows that you filed four complaints, including a fourth amended complaint in 2022 after the motion to dismiss. Am I right in understanding that that complaint also did not spell out the path to liability that you're pursuing now? Yeah. If I could, yes. But, if Your Honor, the reason that we filed that complaint is because New York City passed a law opening a window for liability under the GMVA, and so we didn't change substantively the allegations when that law was passed. There was no... So it wasn't in response to the district court's motion to dismiss?  Okay. Thank you. Okay. Thank you both. Thank you, Judge. We appreciate it, and we'll take it under advisement. And thank you for your arguments.